UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


HIGHLAND CAPITAL          )
MANAGEMENT, LP,        )
                                  )
        Plaintiff,          )               CIVIL ACTION NO.
                                  )
VS.                       )               3:18-CV-0181-G
                                  )
INTERNAL REVENUE SERVICE,  )
                                  )
        Defendant.       )


## MEMORANDUM OPINION AND ORDER

Before the court is the defendant Internal Revenue Service ("IRS")'s motion

for summary judgment (docket entry 21). For the reasons stated below, the IRS's

motion for summary judgment is granted in part and denied in part.

## I. BACKGROUND

This case arises from a Freedom of Information Act ("FOIA") request made by

the plaintiff Highland Capital Management, LP ("Highland") to the IRS. Highland

is a Delaware limited partnership whose headquarters is in Dallas, Texas. Complaint

(docket entry 2) ¶ 1. The IRS is a government agency of the United States within

the meaning of FOIA, 5 U.S.C. § 552. Complaint ¶ 2; Answer (docket entry 14) ¶ 2.

A. FOIA Request

On October 19, 2016, Highland filed a FOIA request with the IRS seeking

> [d]ocuments and emails sent to the Brattle Group by the
> IRS in connection with the IRS's audit of the 2008 tax
> year of Highland Capital Management, LP, and documents
> and emails sent by the Brattle Group to the IRS, including
> documents relating to the IRS's hiring of the Brattle
> Group, the Brattle Group's Reports dated October 23,
> 2015 and February 2, 2016, and its "Phase I Report," in
> connection with the IRS's audit of the 2008 tax year of
> Highland Capital Management, LP.

Appendix to Memorandum in Support for the Internal Revenue Service's Motion for

Summary Judgment ("Appendix in Support"), Exhibit A (docket entry 23); *see also*

Complaint ¶ 12; Answer ¶ 12.  The IRS hired The Brattle Group to provide expert

advice related to the examination of Highland's tax returns for the taxable years 2008

and 2009.  Appendix in Support, Exhibit 2 ¶ 6.

B. First Search Conducted by the IRS

To respond to Highland's FOIA request, on November 1, 2016, the IRS

assigned IRS Disclosure Office caseworker Patricia Williams ("Williams") to begin

searching for responsive documents.  Appendix in Support, Exhibit 1 ¶ 8.  Williams

located Highland's examination case file using the IRS's Integrated Data Retrieval

System ("IDRS"), a system consisting of computer databases and programs that

support IRS employees working active tax cases.  *Id.* ¶ 11.  The IDRS manages data

that has been retrieved from the Master File System, the IRS's nation-wide

information system containing most taxpayer account information. *Id.* Using the

IDRS allows employees to take specific actions on taxpayer accounts, track status,

and post transaction updates to the Master File. *Id.* Williams used a series of

command codes to retrieve summaries of information for the years requested by

Highland, as well as detailed information about Highland's 2008 tax year, and the

examination case ongoing for tax year 2008. *Id.* ¶ 14.

As a result of her initial search, Williams spoke with an agent to obtain more

information about Highland's request; this agent informed Williams that Revenue

Agent Marcia Vanterpool ("Vanterpool") could provide her with additional

information about the examination records. Appendix in Support, Exhibit 1 ¶ 14.

Then, on November 8, 2016, Williams contacted Vanterpool, who informed

Williams that she would be able to locate the documents requested by Highland in

the examination case file, but that the team conducting Highland's civil examination

would require additional time to review the responsive records for confidential

information. *Id.* ¶ 15. Accordingly, Williams mailed an extension letter to Highland

on November 14, 2016, extending the response date of the FOIA request to January

13, 2017. *Id.* ¶ 16.

After her conversation with Williams, Vanterpool brought the FOIA request to

the attention of the examination team. Appendix in Support, Exhibit 1 ¶ 17. Chief

Counsel Attorney Veronica Richards ("Richards"), who the IRS assigned to provide

legal counsel to the agents conducting Highland's examination, held a meeting with several IRS employees who were conducting Highland's examination to discuss Highland's FOIA request. Appendix in Support, Exhibit 2 ¶ 10. The employees at the meeting were Revenue Agents Betty Wang ("Wang"), Vanterpool, Edward "Buck" Townsend ("Townsend"), and Ronald "Mark" Degan ("Degan"). Appendix to Reply in Support of the Internal Revenue Service's Motion for Summary Judgment ("Appendix to Reply") (docket entry 38), Exhibit 1 ¶ 6. That same day, Townsend emailed Financial Products Senior Advisor Mark Perwien ("Perwien") and IRS contract representative Nick Wynen ("Wynen") to inform them that they would need to search their records for responsive documents. *Id.* After the meeting, Richards asked all employees who were working on Highland's examination to provide any responsive records they possessed. Appendix in Support, Exhibit 2 ¶ 10. Richards and Wang determined that any copies of records involving The Brattle Group would be maintained by Richards, Wang, or Wynen. *Id.* ¶¶ 10,11. For the search for responsive records, Wang and Wynen would serve as the two main points of contact with The Brattle Group, while Richards would serve as the examination team's primary point of contact with the Disclosure Office. *Id.* ¶¶ 10, 11.

Vanterpool, Townsend, Perwien, and Degan searched for records responsive to Highland's FOIA request in November 2016. Appendix to Reply, Exhibit 1 ¶ 7. The records located during their searches were given to the IRS Disclosure Office and

were included in the original release to Highland.  *Id.*  These four custodians,
however, were not able to provide facts describing their respective searches in the
November 2016 search.  *Id.*

At the same time, Richards, Wang, and Wynen conducted separate searches
for responsive documents.  As the primary point of contact with the disclosure office,
Richards reviewed the examination case file provided by Vanterpool.  Appendix in
Support, Exhibit 1 ¶ 17.  Additionally, Richards conducted a search of her emails and
paper files for any communications between herself and The Brattle Group which
related to Highland.  Appendix in Support, Exhibit 2 ¶ 12.

As a main point of contact with The Brattle Group, Wang searched IRS
documents for records relating to The Brattle Group responsive to Highland's
request.  Wang kept a log of all electronic and paper documents received from, or
sent to, The Brattle Group.  *Id.* ¶ 13.  Wang used the log to determine where relevant
records responsive to Highland's request were located in the examination case file,
and found the electronically stored files related to The Brattle Group.  *Id.*  In
addition, Wang conducted a search of her emails, using keyword searches of Brattle
Group employees who had worked with Wang.  *Id.*

Wynen served as the contract representative of The Brattle Group and
searched his records from his work and relationship with The Brattle Group for
records responsive to Highland's request.  Wynen maintained a file on his IRS

computer where he stored all emails and documents related to his work as the IRS contract representative for The Brattle Group. *Id.* ¶ 14. To identify responsive records, Wynen conducted a manual search of his file. *Id.*

All responsive records found by Wang, Vanterpool, Townsend, Degan, Perwien, and Wynen were given to Richards for review. Richards reviewed all records discovered in this search process and produced them to Williams for her own review. *Id.*

This search process took several months to complete. Richards completed her initial review of the responsive records on December 13, 2016. *Id.* Due to technical issues in the electronic storing process of the files prepared and reviewed by Richards, Williams was unable to begin her subsequent review of the responsive records produced by Richards until March 3, 2017. *Id.* ¶ 18. Williams completed her subsequent review of the records on May 30, 2017 and sent the records back to Richards for additional review on June 7, 2017. *Id.* ¶ 19. On July 18, 2017, Williams received notification that Richards had completed her additional review. *Id.* During this review process, extension letters were mailed to Highland on January 12, 2017; February 8, 2017; March 29, 2017; April 26, 2017; and June 30, 2017. *Id.* ¶ 20.

On July 23, 2017, the Disclosure Office shipped all the responsive records found in the search process and determined non-exempt by Richards and Williams to

Highland along with the IRS's determination letter.  Appendix in Support, Exhibit 1
¶ 20.  The determination letter reported that 13,409 pages of responsive records were
located in response to Highland's request, with 132 pages withheld in part and 1,632
pages withheld in full.  Appendix in Support, Exhibit B.  Highland then submitted an
administrative appeal of the IRS's determination on October 12, 2017.  Appendix in
Support, Exhibit 1 ¶ 21.  The IRS's Appeals Office reviewed the July 23, 2017
response letter as well as the material and documents withheld, and on December 1,
2017 sustained the IRS's determination, including its decision to withhold 132 pages
in part and 1,632 pages in full.  *Id.* ¶¶ 22-23; Appendix in Support, Exhibit C.

## C.  Complaint Filed and Second Search

Shortly after unsuccessfully appealing the IRS determination, Highland filed
its complaint on January 24, 2018.  *See* Complaint.  After the complaint was filed,
IRS Office of Chief Counsel attorney Christopher Valvardi ("Valvardi") was assigned
to assist the Department of Justice in the litigation.  Appendix in Support, Exhibit 2
¶ 3.  The IRS filed its answer on March 28, 2018.  *See* Answer.  Williams left the IRS
in January of 2018, leaving Valvardi unable to procure detailed explanations of the
bases for withholding the records that were not produced with the non-exempt
responsive records released to Highland on July 23, 2017.  Appendix in Support,
Exhibit 2 ¶ 19.  Accordingly, Valvardi conducted his own independent review of all
responsive records.  *Id.*

First, Valvardi processed the documents provided to Highland by the Disclosure Office to apply and index the redaction markings for the exempt portions of the records. Appendix in Support, Exhibit 2 ¶ 20. During his review, Valvardi compared the processed copies of the documents with the records originally sent to the Disclosure Office by the examination team and observed that some pages originally provided by the examination team were missing from the copies provided to Highland. *Id.* Ultimately, the reason for the missing pages is unclear, but appears to have been a result of difficulties encountered by the IRS's computer systems in processing the documents for production to Highland. *Id.* In August of 2018, the IRS included the previously missing pages in the released records, increasing the total number of pages determined to be responsive from 13,409 to 15,349. *Id.*; Highland Capital Management, L.P.'s Response to Internal Revenue Service's Motion for Summary Judgment ("Response") (docket entry 26) at 3. From this amount, Valvardi reviewed and determined that 14,937 pages could be released in full, 52 pages should be withheld in part, and 360 pages should be withheld in full. Appendix in Support, Exhibit 2 ¶ 21.

### D. Motion for Summary Judgment Filed and Third Search

On August 10, 2018, the IRS filed the instant motion for summary judgment, as well as an accompanying memorandum in support. *See* Motion for Summary Judgment; Memorandum in Support of the Internal Revenue Service's Motion for

Summary Judgment ("Memorandum in Support") (docket entry 22). In its memorandum in support, the IRS argues that the evidence establishes that the IRS conducted a reasonable search for records responsive to Highland's FOIA request and that the IRS is properly withholding information from Highland because it is exempt from disclosure. See *id.* at 18-35. On October 1, 2018, Highland filed its response. *See* Response. In its response, Highland argues that there exists a genuine dispute of fact as to whether the IRS conducted an adequate search as required by FOIA. *Id.* at 5-7. Highland also argues that portions of both Thompkins's and Valvardi's affidavits should be stricken on grounds of inadmissible hearsay. *Id.* at 14-15.

In December 2018, Valvardi and the IRS undertook a new search and review of records to supplement the Disclosure Office's July 2017 production to Highland. Appendix to Reply, Exhibit 1 at 2-7. The new search included the potentially responsive records held by Vanterpool, Townsend, Perwien, and Degan, none of whom kept contemporaneous accounts of the steps they took while assisting in the original November 2016 search. *Id*. at 2-6. In November 2018, Valvardi provided Degan with detailed instructions to conduct a new search, including a list of search terms. Appendix to Reply, Exhibit A. Degan used the provided search terms to search for responsive documents in his email and on the hard drive of his IRS computer. Appendix to Reply, Exhibit 1 ¶ 11-12. The search yielded one email, which The Brattle Group did not send or receive, so the email itself is not responsive

to the FOIA request. *Id.* ¶ 13. The email did, however, include an attachment of 5 pages of potentially responsive material, with one page having already been produced to Highland in the original July 2017 production. *Id.* ¶ 14. Valvardi and the IRS withheld the remaining four pages as exempt. *Id.*

Valvardi was unable to follow the same procedure for Vanterpool and Townsend, as they had both separated from the IRS by the time of the December 2018 search. Appendix to Reply, Exhibit 1 at 4-6. Additionally, neither Vanterpool, Townsend, nor Perwien created contemporaneous accounts of the steps they took while assisting with the original 2016 search. *Id.* Thus, to conduct a more thorough search of Vanterpool's, Townsend's, and Perwien's records, the IRS's Information Technology ("IT") personnel collected all the electronic records maintained by Vanterpool and Townsend and provided the records to Valvardi. *Id.* ¶¶ 22-23. The IRS IT personnel also provided Valvardi with all the electronic records maintained by Perwien which had been collected for other cases. *Id.* Valvardi subsequently used the keywords he provided to Degan to search Vanterpool's, Townsend's, and Perwien's records. *Id.* ¶ 25. The search returned 467 email files, containing 2118 total pages, and 124 non-email files, containing approximately 7120 total pages. *Id.* ¶ 26. Upon manual review of the electronic files found through the search, Valvardi determined that only 45 of the email records were communications with The Brattle Group that were not duplicates of records already produced from other sources, and

that all the non-email files were duplicates of records already produced from other sources.  *Id.* ¶ 27.  In total, Valvardi's search of Vanterpool, Townsend, and Perwien's electronic files produced 105 pages of responsive records, labeled with Bates page numbers 15350 through 15455.  *Id.* ¶ 28.

Additionally, during the new December 2018 search, Valvardi discovered that some documents that Wang and Richards had provided to the Disclosure Office during the original FOIA search in 2016 contained embedded electronic attachments that were not visible when Valvardi first reviewed the original batch of documents. *Id.* ¶ 29.  Valvardi reviewed the records from the original July 2017 production to find all hidden attachments and discovered that many were duplicate copies of records already reviewed and either produced to Highland or withheld as exempt.  *Id.* ¶ 31.  An additional 403 pages of attachments, however, were not previously produced to Highland, and were accordingly produced to Highland under Bates page numbers 15456 through 15858.  *Id.* ¶ 32.  In total, as the result of the new December 2018 search, on February 8, 2019, the IRS produced to Highland 508 additional documents (403 pages of attachments and 105 pages of electronic files) numbered 15350 through 15858.  *Id.* ¶ 33.

On March 4, 2019, the IRS filed its reply in support of its motion for summary judgment.  *See* Internal Revenue Service's Reply in Support of its Motion for Summary Judgment ("Reply") (docket entry 37).  In its reply, IRS first details the

new December 2018 search and then argues that both the original 2016 search and its subsequent reviews and searches led by Valvardi were adequate and reasonable under FOIA. *Id.* at 1-6. Moreover, the IRS contends that it exceeded requirements to demonstrate proper withholding of information under FOIA by providing both *Vaughn* declarations as exhibits to the original motion and the reply, and by providing a *Vaughn* index as an exhibit to its reply. *Id.* at 6-9; *see* Appendix to Reply, Exhibit B; *see generally* Appendix in Support; Appendix to Reply.

Highland filed its surreply on March 18, 2019. *See* Highland Capital Management, L.P.'s Surreply to Internal Revenue Service's Reply in Support of Motion for Summary Judgment and Request for Hearing ("Surreply") (docket entry 39). In its surreply, Highland argues that the exemptions claimed by the IRS are a pretext to prevent Highland from obtaining the "Phase I Report" created by The Brattle Group regarding the IRS's ongoing examination into Highland's tax year 2008. *Id.* at 2-5. Highland additionally requests a hearing with the court in order to present its evidence and prove to the court that the IRS is wrongfully withholding from Highland information that is properly disclosable. *Id.* The IRS's motion for summary judgment is now ripe for decision.

## II. ANALYSIS

### A. Legal Standard

In general, summary judgment is proper only if "there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1). "In the FOIA context, however, the traditional [summary judgment] standard is modified because 'the threshold question in any FOIA suit is whether the requester can even *see* the documents the character of which determines whether they can be released.'" *Batton v. Evers*, 598 F.3d 169, 175 (5th Cir. 2010) (quoting *Cooper Cameron Corp. v. U.S. Department of Labor, Occupational Safety and Health Administration*, 280 F.3d 539, 543 (5th Cir. 2002)) (emphasis in original). "The FOIA expressly places the burden on the defending agency to sustain its action and show that it acted in accordance with the statute." *Driggers v. United States*, No. 3:11-CV-0229-N, 2011 WL 5525337, at *3 (N.D. Tex. Oct. 26, 2011) (Ramirez, M.J.) (citing *Batton*, 598 F.3d at 175; *Cooper Cameron*, 280 F.3d at 543); *see also* 5 U.S.C. § 552(a)(4)(B) (". . . and the burden is on the agency to sustain its action."). To meet its summary judgment burden, the agency must establish that: (1) its search for the requested material is adequate; and (2) that each responsive document is either produced, unidentifiable, or exempt from production. *Driggers*, 2011 WL 5525337, at *3; *Cooper Cameron*, 280 F.3d at 543.

In applying this standard, the court is mindful of FOIA's purpose. The FOIA "embodies a philosophy of full disclosure by government agencies and requires them to make their records available to the public." *Driggers*, 2011 WL 5525337, at *2 (citing 5 U.S.C. § 552). Moreover, "[t]he FOIA was enacted to 'pierce the veil of

administrative secrecy and to open agency action to the light of public scrutiny.'"

*Batton*, 598 F.3d at 175 (quoting *Department of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)).  Accordingly, the exemptions to disclosure an agency may claim "are explicitly limited by statute and should be construed narrowly."  *Id.*  Furthermore, in a FOIA case a court should grant an agency's motion for summary judgment only if the agency identifies the documents at issue and explains why they fall under the claimed exemptions.  *Id.*; *Cooper Cameron*, 280 F.3d at 543.  If there is contradictory evidence or evidence of agency bad faith, a court should not grant summary judgment for an agency.  *Gahagan v. United States Citizenship and Immigration Services*, 147 F. Supp. 3d 613, 621 (E.D. La. 2015) (citing *Gallant v. National Labor Relations Board*, 26 F.3d 168, 171 (D.C. Cir. 1994)).

An agency generally submits affidavits or declarations to satisfy its burden on a summary judgment motion under FOIA.  *Driggers*, 2011 WL 5525337, at *3; *Gahagan*, 147 F. Supp. 3d at 620.  "These affidavits must be clear, specific, and reasonably detailed while describing the withheld information in a factual and nonconclusory manner."  *Gahagan*, 147 F. Supp. 3d at 621.  In addition, affidavits and declarations submitted by an agency are entitled to a "presumption of legitimacy" unless there is evidence of bad faith in handling the FOIA request.  *Batton*, 598 F.3d at 176 (citing *United States Department of State v. Ray*, 502 U.S. 164, 179 (1991)).  "The presumption of legitimacy, however, does not relieve the

withholding agency of its burden of proving that the factual information sought falls within the statutory exemption asserted." *Id.* In fact, even if an agency submits affidavits, a district court has the discretion to inspect the content of agency documents *in camera* to determine whether they fall under any of the FOIA exemptions. *Gahagan*, 147 F. Supp. 3d at 621. Importantly, the Fifth Circuit has cautioned that in instances where it is determined that records do exist, the legislative intent behind the FOIA requires that a district court do something more than rely solely upon an affidavit, be it by inspecting the records *in camera* or by requesting a *Vaughn* index.[1] See *Batton*, 598 F.3d at 175-76.

## B. Application

### 1. *Adequacy of Search*

As a threshold matter, the court must determine whether the IRS's search for responsive documents was adequate. *Batton*, 598 F.3d at 176 (citing *Santos v. Drug Enforcement Administration*, 357 F. Supp. 2d 33, 37 (D.D.C. 2004)). "An agency may demonstrate that it conducted an adequate search by showing that it used 'methods which can be reasonably expected to produce the information requested.'" *Id.* (citing

---

[1] "The vaughn index is named after the case of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), and is "a routine device through which the agency describes the document responsive to a FOIA request and indicates the reasons for redactions or withholdings in sufficient detail to allow a court to make an independent assessment of the claims for exemptions." *Driggers*, 2011 WL 5525337, at *3 n.1 (citing *Rugiero v. United States Department of Justice*, 257 F.3d 534, 544 (6th Cir. 2001)).

*Oglesby v. United States Department of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). "The issue 'is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*.'" *Gahagan*, 147 F. Supp. 3d at 622 (quoting *Weisberg v. United States Department of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)) (emphasis in original). As mentioned previously, to establish the adequacy of its search, an agency may submit affidavits or declarations, which are afforded a presumption of good faith, and which explain the scope of method of the search used by the agency. *Id.*

Here, the IRS relies on the declarations of Thompkins and Valvardi to explain the IRS's search methodology.[2] These declarations, taken together, explain that in

---

[2]     Highland, in its response, argues that certain portions of Valvardi's and Thompkins's affidavits should be stricken and not considered by this this court. Response at 7, 14-15. Specifically, Highland asserts that paragraphs 9, 13 through 15, and 17 through 20 of Thompkins's affidavit, as well as paragraphs 10 through 15 and 28 of Valvardi's affidavit contain hearsay and are thus inadmissible for the purpose of deciding the IRS's summary judgment motion. *Id.* at 14-15. The court disagrees with Highland. "Generally, declarations accounting for searches of documents that contain hearsay are acceptable." *Kay v. Federal Communications Commission*, 976 F. Supp. 23, 34 n.29 (D.D.C. 1997) (citing *SafeCard Services, Inc. v. Securities and Exchange Commission*, 926 F.2d 1197, 1201 (D.C. Cir. 1991)), *aff'd*, 172 F.3d 919 (D.C. Cir. 1998); see also *Barnard v. Department of Homeland Security*, 531 F. Supp. 2d 131, 138 (D.D.C. 2008) ("Consistent with these requirements, hearsay in FOIA declarations is often permissible."); *Brophy v. United States Department of Defense*, No. Civ. A. 05-360 (RMC), 2006 WL 571901, at *4 (D.D.C. Mar. 8, 2006) ("Declarations that contain hearsay in recounting searches for documents are generally acceptable."). Here, Thompkins was the Disclosure Manager for the Disclosure Office and the direct supervisor of Williams as she conducted the search, and Valvardi was assigned to assist the Department of Justice in the instant litigation. Appendix in Support, Exhibit 1 ¶¶ 2,4; Appendix in Support, Exhibit 2 ¶ 3.

(continued...)

response to Highland's original request and to this litigation, the IRS and its agents conducted three searches for responsive documents. Thompkins's declaration establishes that the first search in response to Highland's request was led by Williams and Richards. Appendix in Support, Exhibit 1 at 1-5. The IRS Disclosure Office assigned Williams to the case regarding Highland's request. *Id.* ¶ 3. Williams began the search for responsive documents by accessing the IDRS to locate the examination case file of Highland's tax year 2008. *Id.* ¶ 11. After using a series of command codes to search the IDRS for the examination case file, Williams learned that Vanterpool would be able to provide information and documents to the Disclosure Office to respond to Highland's request. *Id.* at 4. Williams contacted Vanterpool to request the responsive information from the examination case team, but Vanterpool advised Williams that providing all responsive records would take additional time to review the records for exempt material. *Id.* ¶ 15. Accordingly, Williams mailed an extension letter to Highland extending the response date of the request. *Id.* ¶ 16.

After receiving Highland's request, Richards called a meeting of the examination case team of Wang, Vanterpool, Townsend, and Degan to inform them about the request, and asked them to conduct searches of their respective records for responsive records. Appendix to Reply, Exhibit 1 ¶ 6; Appendix in Support, Exhibit 2

[2](...continued)
Accordingly, Thompkins and Valvardi were the most appropriate people to provide a comprehensive affidavit.

¶ 10.  Townsend emailed Perwien and Wynen to inform them that they would need to search their records for responsive documents as well.  Appendix to Reply, Exhibit 1 ¶ 6.  Richards and Wang determined that the records produced in the search would be maintained by Richards, Wang, or Wynen.  Appendix in Support, Exhibit 2 ¶¶ 10, 11.  Vanterpool, Townsend, Perwien, and Degan each searched their emails and paper files for records responsive to Highland's request, and their searches produced records that were given to the Disclosure Office and included in the original release to Highland.  Appendix to Reply, Exhibit 1¶ 7.  Vanterpool, Townsend, Perwien, and Degan, however, all failed to keep contemporaneous accounts describing their search methods.  *Id.*

Simultaneously, Richards, Wang, and Wynen searched their emails, paper files, and other relevant material for records responsive to Highland's request.  Richards reviewed the examination case file provided by Vanterpool, as well as her emails and paper files for any material responsive to Highland's request.  Appendix in Support, Exhibit 1 ¶ 17; Appendix in Support, Exhibit 2 ¶ 12.  Wang kept a log of all electronic and paper documents received from and sent to The Brattle Group, and used the log to find files related to The Brattle Group responsive to Highland's request.  *Id.* ¶ 13.  Additionally, Wang searched her personal emails using keywords of employees of The Brattle Group who had worked with Wang on the examination of Highland's tax year 2008.  *Id.*  Wynen maintained a file of all emails and

documents related to his work with The Brattle Group and conducted a manual search of the file for documents responsive to Highland's request. *Id.* ¶ 14. Richards reviewed all records discovered in this search process and produced them to Williams for review by the Disclosure Office. Appendix in Support, Exhibit 1 ¶ 17. After additional review by both Richards and Williams, on July 23, 2017, the Disclosure Office shipped all responsive records found in the search to Highland, which was comprised of 13,409 total responsive pages, with 132 pages withheld in part and 1,632 pages withheld in full. Appendix in Support, Exhibit B.

In January of 2018, Williams left the IRS and shortly after her departure Valvardi was assigned to assist the Department of Justice in the instant litigation. Appendix in Support, Exhibit 2 ¶¶ 3, 19. Williams's departure left Valvardi unable to procure detailed explanations of the bases for withholding the records not produced with the non-exempt responsive records from the original search. *Id.* ¶ 19. Accordingly, Valvardi conducted his own independent review of all responsive records found in the search. *Id.* Valvardi compared the copies of the processed records produced to Highland in July 2017 with the records originally produced to the Disclosure Office by the examination team and discovered that some pages originally produced by the examination team were missing from the copies produced to Highland. *Id.* ¶ 20. Valvardi then reviewed all responsive records from the search, including the previously missing pages, and determined that some pages withheld in

the July 2017 production were non-exempt and could properly be produced to Highland. *Id.* The IRS released the new pages to Highland, as well as the pages newly determined to be non-exempt from the July 2017 production. *Id.* Ultimately, Valvardi's review increased the number of responsive pages from 13,409 to 15,349, with 14,937 pages released in full, 52 pages withheld in part, and 360 pages withheld in full. *Id.* ¶ 21.

In late 2018, Valvardi directed a new search and review to supplement the Disclosure Office's July 2017 production to Highland. Appendix to Reply, Exhibit 1 at 2-7. The new search focused on the records maintained by Vanterpool, Townsend, Perwien, and Degan, who did not keep contemporaneous accounts of the steps they took while assisting in the original November 2016 search. *Id.* at 2-6. In November of 2018, Valvardi provided Degan with detailed instructions to conduct a new search of his records, including a list of search terms. Appendix to Reply, Exhibit A. Degan searched his emails and the hard drive of his computer which yielded one email that was not responsive to Highland's request. Appendix to Reply, Exhibit 1 ¶¶ 11-13, 15. The email, however, included an attachment of 5 pages of potentially responsive material. *Id.* ¶ 14. One page had already been produced to Highland in the July 2017 production, and the other four were withheld by the IRS as exempt. *Id.* Valvardi was unable to follow the same procedure to search the records of Vanterpool and Townsend, as both had separated from the IRS by the time of the December

2018 search.  Appendix to Reply, Exhibit 1 at 4-6.  Accordingly, the IRS's IT

personnel collected all electronic records maintained by Vanterpool and Townsend

and provided the records to Valvardi.  *Id.* ¶¶ 22-23.  The IT personnel also provided

Valvardi with the electronic records maintained by Perwien, which had been collected

for other ongoing cases.  *Id.*  Valvardi used the procedure he provided to Degan to

search the records of Vanterpool, Townsend, and Perwien, including the use of the

search terms provided to Degan.  *Id.* ¶ 25.  The search resulted in the discovery of

467 email files, containing 2118 total pages, and 124 non-email files, containing

approximately 7120 total pages.  *Id.* ¶ 26.  Valvardi manually reviewed the records

and determined that only 45 of the email records were not duplicates of records

already produced in the July 2017 production to Highland and that all non-email

files discovered had already been produced.  *Id.* ¶ 27.  The new search produced 106

pages of new responsive records.  *Id.* ¶ 28.

Additionally, during the new search in 2018, Valvardi discovered that

documents produced during the original search in 2016 contained embedded

electronic attachments that were not visible during Valvardi's first review of the

documents.  Appendix to Reply, Exhibit 1 ¶ 29.  Valvardi manually reviewed the

records produced in the original July 2017 production and found an additional 403

pages of attachments, and accordingly produced them to Highland.  *Id.* ¶¶ 32-33.  In

total, as a result of the 2018 search, on February 8, 2019, Valvardi and the IRS

produced 508 additional documents to Highland.  *Id.* ¶ 33.

Based on the multiple searches described in the IRS's affidavits, the court concludes that the IRS has satisfied its burden of conducting an adequate search. The IRS uncovered a total of 15,858 pages of responsive documents by using varying search methods designed to accurately respond to Highland's request.  Nevertheless, Highland raises arguments as to why the IRS's search was inadequate.  *See* Response at 5-7.

First, Highland argues that the IRS's response to its FOIA request was "obstructionist, time-consuming, and expensive."  Response at 5.  In particular, Highland asserts that because subsequent searches and reviews resulted in the production of documents originally withheld, and because an error resulted in the withholding of 2,000 documents in the original July 2017 production, that there exists a genuine dispute as to the adequacy of the search.  *Id.*  Highland alleges that the subsequent searches and reviews and the production of additional documents therefrom is evidence that the IRS "did not take Highland's Request seriously."  *Id.* at 6.  Highland thus argues that the IRS should not benefit from the presumption of legitimacy afforded to agency affidavits in FOIA litigation.  *Id.*  The court finds these arguments unpersuasive.  The fact that the IRS conducted multiple searches and reviews indicates that the IRS was complying with FOIA obligations in good faith. See *Corbeil v. United States Department of Justice*, No. 04-2265, 2005 WL 3275910, at

*3 (D.D.C. Sept. 26, 2005) ("[A]n agency's prompt report of the discovery of additional responsive materials may be viewed as evidence of its good faith efforts to comply with its obligations under FOIA"); *Landmark Legal Foundation v. Environmental Protection Agency*, 272 F. Supp. 2d 59, 63 (D.D.C. 2003) ("[C]ontinuing discovery and release of documents does not prove that the original search was inadequate, but rather shows good faith on the part of the agency that it continues to search for responsive documents.").

Second, Highland contends that the original search undertaken by the examination case team was an effort by the IRS to "cherry-pick custodians." Response at 6. Highland argues that the search method detailed in the IRS's declaration, specifically the manual searching of email boxes and case folders for responsive records by the examination team, is inadequate under FOIA. *Id.* The court disagrees. Both Thompkins's and Valvardi's declarations assert that there would be no other potential source of records within the IRS that would likely contain additional records responsive to Highland's request. Appendix in Support, Exhibit 1 ¶ 10; Appendix in Support, Exhibit 2 ¶ 18. Additionally, Valvardi, in his first declaration, asserts that "a proper search for responsive records was conducted" after reviewing the methods and results of the search. Appendix in Support, Exhibit 2 ¶ 17. Highland offers no theory or supporting evidence that additional sources of responsive records exist or that the IRS acted in bad faith in conducting its search.

*See generally* Response. Because "[p]erfection is not the standard by which the reasonableness of a FOIA search is measured[]", *Judicial Watch, Inc. v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003), the court cannot conclude that the IRS's search was inadequate because of its methods or which employees were a part of the process.[3]

Furthermore, Highland argues that the IRS's production revealed other employees who could have potentially responsive documents, specifically Townsend and Perwien, but that the IRS did not conduct a search of their records. *Id.* at 6-7. Valvardi's second declaration, however, directly refutes Highland's assertions. Valvardi's declaration clearly contends that as a part of the original search, both Townsend and Perwien searched their files for records responsive to Highland's request and provided them to the Disclosure Office for production in the original July 2017 production. Appendix to Reply, Exhibit 1 ¶ 7. Furthermore, because Valvardi was unable to procure detailed explanations of the search procedures used by Townsend and Perwien, Valvardi conducted a subsequent search of their records and produced the responsive documents discovered therein to Highland. *Id.* ¶¶ 25-28. Ultimately, because the court concludes that the IRS's declarations show that it used reasonable search methodology, and because the court is unconvinced by Highland's

---

[3]     For the same reasons, the court cannot conclude that the IRS's search was inadequate because it did not "have a computer or information specialist run a simple keyword search against all potential custodians who interacted with The Brattle Group." Response at 6.

arguments to the contrary, the court concludes that the IRS has satisfied its burden of showing it conducted an adequate search.

2.  *Records Withheld Under Exemption 3*
*in Conjunction With § 6103(a)*

The IRS argues that it may partially withhold page 14943 under the third FOIA exemption in conjunction with I.R.C. § 6103(a) (2018) because the portion of the record that is withheld contains the taxpayer information of The Brattle Group. Memorandum in Support at 21-22; Appendix in Support, Exhibit 2 at 8.  The court agrees.

"FOIA Exemption 3, 5 U.S.C. § 552(b)(3) (2006), states that an agency need not disclose any documents 'specifically exempted from disclosure by statute' if the statute 'requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue' or 'establishes particular criteria for withholding or refers to particular types of matters to be withheld.'"  *Batton*, 598 F.3d at 177 (quoting 5 U.S.C. § 552(b)(3) (2006)).  "Section 6103 of the Internal Revenue Code, in turn, provides that tax returns, as well as return information, are confidential and shall not be disclosed to anyone other than the taxpayer."  *Id.* (citing I.R.C. § 6103(a) (2006)).  Accordingly, section 6103 of the Internal Revenue Code is a qualifying statute under the third FOIA exemption.  *Id.*  Section 6103(a) of the Internal Revenue Code states that no officer or person with access to return information "shall disclose any return or return information obtained by him in any manner in

connection with his service as such an officer or an employee or otherwise or under the provisions of this section." I.R.C. § 6103(a). The definition of return information protected by section 6103 includes "a taxpayer's identity." I.R.C. § 6103(b)(2)(A). Taxpayer identity includes the taxpayer's "identifying number." I.R.C. § 6103(b)(6).

To support its claim that exemption three applies to page 14943, the IRS relies on Valvardi's declaration. *See* Memorandum in Support at 22. In particular, Valvardi's first declaration provides that "[p]age 14943 is a tax compliance questionnaire. It is withheld in part because it contains the Employer Identification Number ("EIN") of The Brattle Group. The EIN is the return information of third party Brattle Group." Appendix in Support, Exhibit 2 ¶ 26. Valvardi's first declaration further provides that the IRS can only disclose return information with written consent or demonstrated material interest in the information, but that "[Highland] did not provide with its request either the written consent from The Brattle Group or information showing it had a material interest in the return information of The Brattle Group." *Id.* Highland does not address this particular exemption in its response or in its surreply. *See generally* Response; Surreply. A taxpayer's EIN, pursuant to Internal Revenue Code sections 6103(b)(2)(A) and 6103(b)(6), is protected from disclosure absent an explicit exception. I.R.C. §§ 6103(a), 6103(b)(2)(A), 6103(b)(6). Therefore, the information as described in

Valvardi's declaration is confidential under the Internal Revenue Code and is exempt from disclosure by the IRS absent an exception under section 6103.

Two exceptions to the general bar of non-disclosure are potentially applicable in this case. The first potential exception to the general rule, I.R.C. § 6103(c), requires that the taxpayer give consent of disclosure to the third party to the IRS; Highland offers no evidence that it obtained consent from The Brattle Group for the disclosure of the information withheld in page 14943. Second, I.R.C. § 6103(e) allows for the disclosure of confidential information to third parties if they can demonstrate "material interest" in the information that is not disclosed, but Highland does not argue material interest in its briefing, nor has Highland presented evidence in the summary judgment record that it has a material interest in the information as defined in section 6103(e). Accordingly, Highland has not satisfied either the exception found in sections 6103(c) or 6103(e), and the IRS cannot disclose The Brattle Group's EIN to Highland on grounds of material interest.

Therefore, because the court concludes that the information withheld in part by the IRS is exempt from disclosure under I.R.C. § 6103(a), and because the potentially applicable exceptions to the general rule of nondisclosure found in I.R.C. §§ 6103(c) and 6103(e) have not been satisfied by Highland, the court concludes that summary judgment should be granted in favor of the IRS as to page 14943. The IRS may withhold page 14943 in part.

3. *Records Withheld Under Exemption 3 in Conjunction
with 26 U.S.C. § 6103(e)(7) and Exemption 7(A)*

The IRS also seeks to withhold a number of pages in whole and in part under

FOIA exemption three, 5 U.S.C. § 552(b)(3) in conjunction with 26 U.S.C.

§ 6103(e)(7), as well as FOIA exemption seven, 5 U.S.C. § 552(b)(7)(A).

Memorandum in Support at 11-14. Specifically, the IRS argues that it is withholding

in part pages 4, 407, 413-414, 420, 446, 454-456, 458-459, 470-471, 474-475, 503,

506-507, 532, 535, 538, 545, 547, 550, 567-568, 576, 580-581, 588, 613-614,

14752, and 14841 pursuant to FOIA exemptions 3 and 7(A) because "these pages

contain copies of email or e-fax communications" between IRS employees and Brattle

Group contractors that discuss Highland's return information. Memorandum in

Support at 13. The IRS contends that if the discussions contained in these pages

were released to Highland, the scope and strategy of the IRS's investigation into

Highland would be revealed, which would interfere with the IRS's enforcement

proceedings and impair the IRS's ability to ensure the collection of proper tax and

penalties from Highland. *Id*.

Additionally, the IRS argues that it is withholding in full pages 247-300 and

348 properly under FOIA exemptions 3 and 7(A) because they "contain portions of a

confidential report prepared for the [IRS] by The Brattle Group." *Id*. The IRS

alleges that the disclosure of the information contained within the report would

reveal the scope, direction, and strategy of the IRS's civil examination of Highland,

which would both interfere with the IRS's enforcement proceedings and seriously impair the ability of the IRS to ensure the collection of proper tax and penalties from Highland. *Id*.

The IRS also contends that it is properly withholding in part page 369 pursuant to FOIA exemption 3 and 7(A) because it contains an email between Ms. Wang and Ms. Richards that discusses Highland's return information. *Id*. Much like the other documents withheld under FOIA exemptions 3 and 7(A), the IRS avers that disclosing page 369 would be expected to interfere with its enforcement proceedings and would seriously impair the ability of the government to ensure the collection of the proper tax and penalties from Highland. *Id*.

Moreover, the IRS alleges that it is properly withholding pages 15046-15151 and 15160-15349 in full pursuant to exemptions 3 and 7(A) because they contain The Brattle Group's "Phase I Report," which contains Highland's return information.[4] *Id*. at 13-14. Highland again avers that if this report were disclosed, it would reveal the scope, direction, and strategy of its examination, which would reasonably be expected to interfere with its enforcement proceedings and would impair its ability to ensure the collection of the proper tax and penalties from Highland. *Id*. at 14.

---

[4] The IRS initially sought to withhold pages 15152-15159; however, the IRS no longer claims any exemption for these pages. Appendix to Reply, Exhibit B at 25; Appendix to Reply, Exhibit 2 ¶ 5.

Finally, by way of its reply and the declaration of Roy R. Metcalf, the IRS contends that it is also properly withholding under FOIA exemption 3 and exemption 7(a): (1) pages 15352, 15371, 15373, 15377, 15381, and 15424 in part because they contain copies of emails between Ms. Wang and contractors for The Brattle Group that discuss Highland's return information; (2) pages 15458-15505 and 15507-15560 in full because they consist of faxed messages containing copies of The Brattle Group's Phase III Report; (3) pages 15617-15621, 15623-15624, 15626-15627, 15662-15665, 15667-15669, and 15844-15845 in part because they consist of "faxed messages containing memoranda from The Brattle Group to the [IRS] which ask questions, or provide answers to questions, intended to inform the analysis provided by The Brattle Group in their reports[;]" (4) pages 15629-15660 in full because they consist of faxed messages containing The Brattle Group's Phase I Memorandum; and (5) pages 15671-15680, 15682-15691, 15693-15701, 15703-15713, 15715-15725, 15727-15737, and 15739-15747 in full because they consist of faxed messages containing a draft copy of The Brattle Group's Phase II Report. *See* Appendix to Reply at 22-24, 31-34.

Highland argues in its response, however, that the IRS has not satisfied its summary judgment burden with respect to the documents withheld under FOIA exemptions 3 and 7(A). Response at 9-11. In particular, Highland avers that the IRS has not properly claimed these exemptions because the IRS has "failed to identify the

scope and nature of the Unidentified Report and Phase 1 Report. . . ." *Id*. at 9.

Moreover, Highland argues that the IRS's stated rationale behind withholding the

reports under FOIA exemptions 3 and 7(A) is not only too vague, but that it makes

little sense considering "the IRS has produced to Highland other, more recent reports

– including a Phase II report – completed by The Brattle Group." *Id*. at 10-11.

Accordingly, Highland contends that summary judgment as to the documents

withheld under FOIA exemptions 3 and 7(A) is improper.

As noted earlier by the court, section 6103 of the Internal Revenue Code is a

qualifying statute under FOIA exemption 3, 5 U.S.C. § 552(b)(3).  Section

6103(e)(7) of the Internal Revenue Code provides that "[r]eturn information with

respect to any taxpayer may be open to inspection by or disclosure to any person

authorized by this subsection to inspect any return of such taxpayer if the Secretary

determines that disclosure would not seriously impair Federal tax administration."

*See* 26 U.S.C. § 6103(e)(7).  Section 6103(e)(7) thus protects from disclosure return

information that the Secretary determines would seriously impair federal tax

administration.  See *Linsteadt v. Internal Revenue Service*, 729 F.2d 998, 1000-01 (5th

Cir. 1984).  "The [c]ourt's review of the Secretary's determination that a disclosure

would seriously impair Federal tax administration is *de novo*, and the IRS bears the

burden of proof to justify nondisclosure."  *Sea Shepherd Conservation Society v. Internal

Revenue Service*, 89 F. Supp. 3d 81, 100 (D.D.C. 2015) (internal quotations and

citations omitted).

Additionally, exemption 7(a) provides that "records or information compiled for law enforcement purposes" may be withheld by an agency in response to a FOIA request, "but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). To satisfy its burden and withhold records under exemption 7(a), the agency must establish "that (1) the documents were investigatory records compiled for law enforcement purposes and (2) production of the documents would interfere with pending enforcement proceedings." *Pruitt Electric Co. v. United States Department of Labor*, 587 F. Supp. 893, 895 (N.D. Tex. 1984) (Fish, J.).

Having reviewed the parties' arguments and appendices, the court concludes that the IRS's motion for summary judgment should be denied with respect to all documents withheld under FOIA exemption 3 in conjunction with 26 U.S.C. § 6103(e)(7). After reviewing the IRS's appendices and its *Vaughn* index, the court is unpersuaded that the IRS has properly claimed this exemption. Although the IRS has stated in its appendices and *Vaughn* index the nature and types of documents withheld under FOIA exemption 3 in conjunction with 26 U.S.C. § 6103(e)(7), *see* Appendix in Support; Appendix to Reply, the IRS has done very little to explain to the court just exactly *how* disclosing any of these documents would seriously impair

federal tax administration.  Instead, in the IRS's appendices and its *Vaughn* index, the IRS simply repeats the conclusory assertions that disclosing these pages "would reasonably be expected to interfere with IRS enforcement proceedings, thereby seriously impairing the ability of the government to ensure the collection of the proper tax and penalties from [the] plaintiff."  *See* Appendix to Reply at 17-24, Appendix in Support 39-40.  Such conclusory allegations are not enough to withhold documents under FOIA, however.  See *Sea Shepherd Conservation Society*, 89 F. Supp. 3d at 101.

Despite this, however, the court concludes that summary judgment should be granted in part with respect to the documents withheld under FOIA exemption 7(a). First, the court concludes that the IRS has not met its summary judgment burden to withhold in part pages 4, 407, 420, 446, 454-456, 458-459, 470-471, 474-475, 503, 506-507, 532, 535, 538, 547, 550, 567-568, 576, 580-581, 588, and 14841 under FOIA 7(a).  Though the IRS provided a *Vaughn* index, the descriptions of these pages contained within said index do not show the court how the release of these records would interfere with the IRS's current enforcement proceedings.[5]  In addition, the "basis for exemptions" section of the *Vaughn* index with respect to these pages

---

[5]     The *Vaughn* index entries for these pages describe these documents as containing "discussions" that either relate to the drafting of The Brattle Group's reports or The Brattle Group's requests for information to be used in the reports.  *See* Appendix to Reply, Exhibit B at 17-20.   Without more explanation, the court is unable to determine how a "discussion" would interfere with the IRS's examination of Highland.

contains nothing more than conclusory assertions. As other courts have noted, FOIA requires more than conclusory assertions. See *Sea Shepherd Conservation Society*, 89 F. Supp. at 101. Consequently, the court concludes that the IRS must submit to the court for *in camera* review pages 4, 407, 420, 446, 454-456, 458-459, 470-471, 474-475, 503, 506-507, 532, 535, 538, 547, 550, 567-568, 576, 580-581, 588, and 14841.[6]

Nevertheless, the court concludes that the IRS has satisfied its summary judgment burden to withhold in part pages 413-414, 545, 613-614, and 14752 under FOIA exemption 7(a). In contrast to the pages discussed in the preceding paragraph, the *Vaughn* index entries for pages 413-414, 545, 613-614, and 14752 are specific and show to the court why disclosing these pages would compromise the IRS's enforcement proceedings against Highland. *See* Appendix to Reply at 17-20. More specifically, the *Vaughn* index entries for pages 413-414, 545, 613-614, and 14752, show the court that these pages contain the IRS's analysis of certain facts to be used in The Brattle Group's report in conjunction with the IRS's examination of Highland, discussions of the IRS's examination strategy, and discussions of facts to be used by the IRS's experts. *Id.* The court is thus satisfied that revealing the IRS's analysis of certain facts, as well as its examination strategy would clearly reveal the scope,

---

[6]     Because the court has concluded that the IRS must submit page 576 for *in camera* review, the same ruling applies to pages 15352, 15371, 15373, 15377 and 15381, as these pages are admitted to be duplicates of page 576. *See* Appendix to Reply at 22.

direction, and strategy of the IRS's enforcement proceedings against Highland. Accordingly, the court concludes that pages 413-414, 545, 613-614, and 14752 may be withheld by the IRS under FOIA exemption 7(a).

In addition, the court concludes that the IRS has met its summary judgment burden to withhold pages 247-300 in full under FOIA exemption 7(a). As stated in the IRS's *Vaughn* index, pages 247-300 contain a "Revenue Agent's copy of the Phase III Report, 'Evaluation of the Analysis and Opinions in the August 2, 2013 Culp Presentation,' which was provided to [the] IRS by [The] Brattle Group at completion of third phase of work." Appendix to Reply at 17. Moreover, these pages contain "highlighted text indicating issues identified by [the] Revenue Agent for additional scrutiny." *Id*. Despite Highland's arguments otherwise, the court agrees with the IRS that disclosing these pages, as well as the issues highlighted by the IRS for extra scrutiny in connection with Highland's investigation, would reveal the scope, direction, and strategy of the IRS's investigation of Highland. Consequently, the IRS may withhold pages 247-300 pursuant to FOIA exemption 7(a).

With respect to pages 348 and 369, however, the court finds that the IRS has not satisfied its summary judgment burden to withhold these pages under FOIA exemption 7(a). First, although the *Vaughn* index entries for pages 348 and 369 adequately describe the nature of each document, the index fails to explain to the court why their disclosure would either interfere with federal tax administration or

compromise the IRS's investigation of Highland. *See* Appendix to Reply at 17.

Moreover, the court is unable to find a sufficient explanation for these exemptions in

either the "basis for exemption" section of the IRS's *Vaughn* index, see *id.*, or the first

declaration of Melissa Avrutine. *See* Appendix in Support at 39-40. Without such an

explanation, the IRS's statements that the disclosure of these pages would

"reasonably be expected to interfere with IRS enforcement proceedings, thereby

seriously impairing the ability of the government to ensure the collection of the

proper tax and penalties from [Highland]" are simply insufficient conclusory

assertions. *See* Appendix to Reply at 17. Accordingly, the court concludes that the

IRS must submit pages 348 and 369 to the court for an *in camera* review.

The court also concludes that the IRS has satisfied its summary judgment

burden to withhold in full pages 15046-15151 and 15160-15349 under FOIA

exemption 7(a). Despite Highland's arguments that the IRS has not satisfied its

summary judgment burden because its description of pages 15046-15151 and 15160-

15349 are "too vague" and conclusory, *see* Response at 9-11, the court is convinced

otherwise. The IRS's *Vaughn* index, as well as the second declaration of Melissa

Avrutine, describe the nature and contents of these documents in sufficient detail to

show the court that disclosing these pages[7] — which were compiled for use in the

--------

[7] As stated in the IRS's *Vaughn* index: (1) pages 15046-15077 consist of The
Brattle Group's Phase I memorandum, which provides a "preliminary review and
evaluation of information provided by [the] IRS to The Brattle Group related to the
(continued...)

IRS's examination of Highland—would interfere with said examination by revealing to Highland the nature and strategy of the IRS's investigation, as well as key facts relied upon by the IRS in its examination.  In short, the IRS has convinced the court that disclosing pages 15046-15151 and 15160-15349 would compromise its investigation of Highland and consequently the court concludes that the IRS may withhold pages 15046-15151 and 15160-15349 pursuant to FOIA exemption 7(a).

Finally, the court concludes that the IRS has satisfied its summary judgment burden under FOIA exemption 7(a) to withhold pages: (1) 15424 in part; (2) 15458-

---

[7](...continued)
taxpayer's examination, in order to assess the data and analytical options available; to identify additional data that may be required; to access the likely cost of the various possible analyses; and to identify the most important issues for the expert's report[;]" (2) pages 15078-15148 consist of preliminary draft copies of The Brattle Group's Phase II Report, entitled "Evaluation of the Economic Motivation for HCMLP's Purchase of the CDS Interests[;]" (3) pages 151149-15151 consist of a "Revenue Agent's preliminary notes from the [IRS's] review of a draft of the Phase III report[;] (4) pages 15160-15237 consist of a "Revenue Agent's copy of the Phase III report, entitled 'Evaluation of the Economic Motivation for HCMLP's Purchase of the CDS Interests," which was provided to the [IRS] by The Brattle Group[;]" (5) pages 15238-15291 consist of Revenue Agent's copy of the Phase III Report, entitled "Evaluation of the Analysis and Opinions in the August 2, 2013 Culp Presentation" provided to the IRS by The Brattle Group, which "includes highlighted text indicating issues identified . . . for additional scrutiny [;]" (6) pages 15292-15293 consist of a message pertaining to Highland, for use by The Brattle Group in drafting reports; (7) pages 15294-15341 consist of a preliminary copy of the Phase III Report which also includes highlighted text indicating issues for additional scrutiny; (8) page 15342 consists of a Revenue Agent's preliminary notes discussing that agent's review of the Phase II Report; (9) page 15343 consists of an online news article that was considered for inclusion in the IRS's expert's reports; and (10) pages 15344-15349 consist of "[r]esponses to requests for additional information pertaining to [Highland] for use by The Brattle Group in drafting reports."  Appendix to Reply at 21-22.

15505 in full; (3) 15507-15560 in full; (4) 15617-15621, 15623-15624, 15626-15627, 15662-15665, 15667-15669, and 15844-15845 in part; (5) pages 15629-15660 in full; (6) and pages 15671-15680, 15682-15691, 15693-15701, 15703-15713, 15715-15725, 15727-15737, and 15739-15747 in full.  The *Vaughn* index provided by the IRS and the declaration of Roy Metcalf describe these documents in sufficient detail to show the court that their disclosure would interfere with the IRS's investigation of Highland.  *See* Appendix to Reply at 23-24, 31-34.  As noted in both the *Vaughn* index and Metcalf's declaration, these pages contain discussions of the analysis used in The Brattle Group's reports, copies of said reports, and memoranda that specifically mention information needed from Highland for the completion of the reports.  Appendix to Reply at 23-24, 31-34.  The court agrees with the IRS that if this information, including the specific factual analyses contained within these reports and requests for additional information about Highland, were disclosed to Highland, the nature, scope, and strategy of the IRS's investigation into Highland would be revealed, thereby interfering with the IRS's examination.  Accordingly, the court concludes that the IRS has satisfied its summary judgment burden under FOIA exemption 7(a) to withhold these pages.

To summarize, based on the descriptions and information contained within the IRS's *Vaughn* index and its various appendices, the court concludes that the IRS has not satisfied its summary judgment burden for any document withheld pursuant

to FOIA exemption 3 in conjunction with 26 U.S.C. § 6103(e)(7). Nevertheless, the court concludes that the IRS satisfied its summary judgment burden to withhold all of the documents it claimed under FOIA exemption 7(a), except for pages 4, 348, 369, 407, 420, 446, 454-456, 458-459, 470-471, 474-475, 503, 506-507, 532, 535, 538, 547, 550, 567-568, 576, 580-581, 588, 14841, 15352, 15371, 15373, 15377 and 15381. Accordingly, the IRS shall therefore file under seal, for an *in camera* inspection by the court, pages 4, 348, 369, 407, 420, 446, 454-456, 458-459, 470-471, 474-475, 503, 506-507, 532, 535, 538, 547, 550, 567-568, 576, 580-581, 588, 14841, 15352, 15371, 15373, 15377 and 15381.

### 4. *Records Withheld Under Exemption 5 for Attorney-Client Privilege*

The IRS also seeks to withhold records in part under FOIA exemption five, 5 U.S.C. § 552(b)(5), because the IRS contends these records are protected by the attorney-client privilege. Memorandum in Support at 30-31; Appendix in Support, Exhibit 2 at 9-10. In particular, the IRS contends that it is withholding pages 369 and 545 in part because they "are email messages between Ms. Wang and Ms. Richards discussing legal advice." Appendix in Support, Exhibit 2 at 10. Highland does not address this particular exemption or the withheld information it purports to cover in its response or surreply. *See generally* Response; Surreply.

The fifth FOIA exemption protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other

than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "To qualify, a document must thus satisfy two conditions: its source must be a [g]overnment agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Department of the Interior v. Klamath Water Users Protective Association*, 532 U.S. 1, 8 (2001). "The Fifth Circuit has interpreted exemption five to encompass the attorney-client privilege, the attorney work product privilege, and the deliberative process privilege." *Gahagan v. United States Citizenship and Immigration Services*, 147 F. Supp. 3d 613, 629 (E.D. La. 2015) (citing *Shermco Industries, Inc. v. Secretary of the Air Force*, 613 F.2d 1314, 1318 (5th Cir. 1980)).

"In the context of a FOIA request, 'the agency is the 'client' and the agency's lawyers are the 'attorneys' for purposes of attorney-client privilege.'" *Id.* (quoting *Judicial Watch, Inc. v. United States Department of Treasury*, 796 F. Supp. 2d 13, 33 (D.D.C. 2011)). "To invoke the privilege, the agency must show that the withheld document (1) involves confidential communications between an attorney and the agency and (2) relates to a legal matter for which the agency has sought professional advice." *Id.* (internal brackets and citations omitted).

The court concludes that the IRS has failed to satisfy its burden on summary judgment for the pages withheld in full and in part under the fifth FOIA exemption for attorney-client privilege. This is because it is clear to the court that the

declarations offered by the IRS are similar to, and therefore share the same deficiencies as, the declarations at issue in *Gahagan*.

Here, the IRS relies on Valvardi's declaration to satisfy its summary judgment burden. Memorandum in Support at 30-31. Valvardi's first declaration contends that the IRS should withhold pages 369 and 545 in part because they "contain facts or analysis relating to a legal matter for which the Service has sought professional advice from Chief Counsel. . . . The exempt records or portions of records include communications among Chief Counsel attorneys relating to legal advice requested by Chief Counsel on behalf of the Service." Appendix in Support, Exhibit 2 ¶ 30.

In *Gahagan*, the district court denied the United States Citizenship and Immigration Service's motion for summary judgment because the agency's declaration did "not contain enough information to permit the [c]ourt to determine whether [the] privilege applies." *Gahagan*, 147 F. Supp. 3d at 629. The declaration provided by the agency explained the assertion of attorney-client privilege by stating "[t]his email provides internal discussion between USCIS counsel to USCIS personnel on litigation against the agency." *Id.* Here, the Valvardi declaration similarly explains the agency's assertion of attorney-client privilege by stating that the withheld documents are "intra-agency communications between [the] Service and Chief Counsel employees" containing "facts or analysis relating to a legal matter for which the Service has sought professional advice from Chief Counsel." Appendix in

Support, Exhibit 2 ¶ 30.  Put simply, both the declaration at issue in *Gahagan* and the declaration at issue here fail to support summary judgment because they are too vague to allow a court to determine if the attorney-client privilege applies.

Valvardi's second declaration includes a *Vaughn* index which does specify the source and the recipient of both records withheld by the IRS.  Appendix to Reply in Support, Exhibit B at 1, 3.  The *Vaughn* index, however, still fails to provide the court with a description of the matters discussed in the withheld documents.  The description offered of page 369 simply reads: "Request for IRS Chief Counsel attorney's advice regarding the preparation of a report by The Brattle Group."  *Id.* at 1.  Page 545's description is equally vague, stating that the document is a "[d]iscussion of examination strategy, including a request by a Revenue Agent for legal advice from Counsel, and advice provided by Counsel in response, with regard to Brattle Group requests for information to be used in drafting reports."  *Id.* at 3. While giving the names of sources and recipients is unnecessary, without a more detailed description of the matters discussed, it is impossible for the court to properly determine if the attorney-client privilege applies.  See *Gahagan v. United States Citizenship and Immigration Services*, No. 15-2540, 2017 WL 3393993 at *2 (E.D. La. Aug. 8, 2017) (concluding that the agency had finally satisfied summary judgment burden of establishing that certain emails were properly withheld under the fifth FOIA exemption for attorney client privilege only after the agency had submitted a

supplemental *Vaughn* index that provided the specific source and recipient of the records in question, as well as a detailed description of the matters discussed).

Accordingly, the court denies summary judgment in favor of the IRS as to the partial withholding of pages 369 and 545 under FOIA exemption five for attorney-client privilege.  Nevertheless, because the court has already determined that the IRS may withhold page 545 pursuant to FOIA exemption 7(a), the court only requires that the IRS file page 369 under seal for *in camera* inspection.

### 5. *Records Withheld Under Exemption 5*
### *for Deliberative Process Privilege*

In addition to withholding records under FOIA exemption 5 for attorney-client privilege, the IRS also claims that it may withhold a number of records under FOIA exemption 5 for the deliberative process privilege.  *See* Memorandum in Support at 28-30; Reply at 10-12.  In particular, the IRS seeks to withhold:  (1) pages 247-300, 348, 15046-15077, 15078-15148, 15149-15151, 15160-15237, 15238-15291, 15292-15293, 15294-15341, 15342, 15343, 15344-15349, 15458-15505, 15507-15560, 15629-15660, 15671-15680, 15682-15691, 15693-15701, 15703-15713, 15715-15725, 15727-15737, 15739-15747 in full; and (2) pages 4, 25, 28, 37, 47, 49, 55, 79, 369, 407, 413, 414, 420, 446, 454, 455, 456, 458-459, 470-471, 474-475, 503, 506-507, 532, 535, 538, 545, 547, 550, 567-568, 576, 580-581, 588, 613-614, 14752, 14841, 15352, 15371, 15373, 15377, 15381, 15424, 15617-15621, 15623-15624, 15626-15627, 15662-15665, 15667-15669, and 15844-15845 in

part.[8] The IRS argues that these pages may be withheld under the deliberative process privilege since they include communications between IRS employees and contractors for The Brattle Group that contain pre-decisional thoughts and deliberations about The Brattle Group's reports. *See* Memorandum in Support at 29-30; Reply at 11.

In response, Highland contends that the IRS has not satisfied its summary judgment burden with respect to the documents withheld under FOIA exemption 5 for the deliberative process privilege. Response at 13-14. More specifically, Highland contends that the IRS's descriptions of the documents withheld under the deliberative process privilege do not "afford the [c]ourt with enough information to verify the accuracy of the redactions" and that "neither Highland nor the [c]ourt can determine whether certain redactions relate to facts (which are not exempt) as opposed to analysis of the IRS or The Brattle Group." *Id*. Consequently, Highland asks that this court conduct an *in camera* review of the pages withheld under the deliberative process privilege pursuant to FOIA exemption 5. *Id*. at 14.

Exemption 5 allows an agency to withhold "inter-agency or intra-agency

_____

[8] Since the court has previously determined that the IRS may withhold: (1) pages 413-414, 545, 613-614, 14752, 15424, 15617-15621, 15623-15624, 15626-15627, 15662-15665, 15667-15669, and 15844-15845 in part; and (2) pages 247-300, 15046-15151, 15160-15349, 15458-15505, 15507-15560, 15629-15660, 15671-15680, 15682-15691, 15693-15701, 15703-15713, 15715-15725, 15727-15737, and 15739-15747 in full, the court will not analyze whether the deliberative process privilege applies to these pages.

memorandums or letters that would not be available by law." 5 U.S.C. § 552(b)(5).

"The purpose of the deliberative process privilege is to enhance the quality of agency decisions by assuring individuals 'who offer information and opinions to the [g]overnment that their communications will be kept in confidence.'" *Gahagan v. United States Citizenship and Immigration Services*, No. 15-2540, 2017 WL 3393993 at *3 (E.D. La. Aug. 8, 2017) (quoting *Shermco Industries, Inc.*, 613 F.2d at 1318). For the deliberative process privilege to apply, "a document must be both 'predecisional' and 'deliberative.'" *Id*. (citing *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975)). A document is predecisional if it was generated before the adoption of an agency policy. *Id*. (citing *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)). A document is deliberative if "it reflects the give-and-take of the consultative process." *Id*. (citing *Judicial Watch, Inc. v. Food and Drug Administration*, 449 F.3d 141, 151 (D.C. Cir. 2006)). "In other words, the document must be such that public disclosure 'would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.'" *Id*. (quoting *Dudman Communications Corp. v. Department of the Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987)). The agency bears the burden of establishing the deliberative process involved and the role played by the documents at issue in the course of that process. *Id*. "Conclusory allegations that merely parrot the legal test do not suffice."

*Id.* (citing *Senate of the Commonwealth of Puerto Rico on behalf of the Judiciary Committee v. United States Department of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987)).

Here, the court concludes that summary judgment should only be partially granted in favor of the IRS with respect to the records it withholds under the deliberative process privilege as codified in the fifth FOIA exemption. In particular, the court concludes that the IRS has, in fact, satisfied its summary judgment burden under FOIA exemption five to withhold page 348 in full and pages 446, 503, 506-507, 547, 550, and 14841 in part. As noted in the IRS's *Vaughn* index, these pages are intra-agency communications that qualify for withholding under the deliberative process privilege, since they consist of communications between IRS employees or communications between IRS employees and contractors employed by The Brattle Group. Appendix to Reply at 17-20; *see also Department of the Interior v. Klamath Water Users Protective Association*, 532 U.S. 1, 10-11 (2001) (holding that communications between agencies and non-government contractors may be afforded protection under the deliberative process privilege); *Hoover v. United States Department of the Interior*, 611 F.2d 1132, 1138 (5th Cir. 1980) (granting protection under the deliberative process privilege to an appraisal report that was prepared by a non-government contractor because the appraisal "plays an integral function in the government's decision whether to seek purchase or condemnation of the land."). In addition, it is clear to the court that these pages are all pre-decisional, since they were

generated prior to the IRS's final decision to adjust Highland's tax liability. *See* Memorandum in Support at 16; Appendix in Support ¶ 45; see also *Gahagan*, 2017 WL 3393993 at *3. Moreover, the court is satisfied that these documents are deliberative because the IRS's *Vaughn* index sufficiently describes the function and significance of the role these documents plays in the "give-and-take of the consultative process."[9] *Gahagan*, 147 F.Supp. 3d at 629. In fact, the descriptions of these documents, both in the IRS's *Vaughn* index and its appendices, are like those at issue in *Competitive Enterprise Institute*, where the court held that the description "discussion among multiple staff . . . concerning a request from [another agency]" was a sufficient description to establish that the deliberative process privilege applied. *Competitive Enterprise Institute v. Environmental Protection Agency*, 232 F. Supp.3d 172, 186 (D.D.C. 2017).

---

[9] For example, consider the *Vaughn* index entry for page 446. *See* Appendix to Reply at 18. The description of this document shows that it consists of "[r]esponses to requests for additional information pertaining to [Highland], for use by The Brattle Group in drafting reports." *Id*. This description reveals that page 446, if disclosed, would not only reveal the author's opinion on the type of information that would be material to the IRS's examination and final adjustment of Highland's tax liability, but it would also demonstrate the opinions of the employees and contractors because the document "reflect[s] the personal opinions of the writer rather than the policy of the agency." See *Batton*, 598 F.3d at 183. Another example is the *Vaughn* index entry for page 14841. *See* Appendix to Reply at 20. The description of the document shows that it contains a "[d]iscussion of language to be used in draft report," which indicates the document functions as part of the editing process of the report, which itself contributes to the IRS's final decision in its examination of Highland. *Id*.

Accordingly, the court concludes that the IRS may withhold page 348 in full and pages 446, 503, 506-507, 547, 550, and 14841 in part under the deliberative process privilege. At the same time, however, the court concludes that the IRS has not satisfied its summary judgment burden to withhold in part pages 4, 25, 28, 37, 47, 49, 55, 79, 369, 407, 413, 414, 420, 454, 455, 456, 458-459, 470-471, 474-475, 532, 535, 538, 567-568, 576, 580-581, 588, 15352, 15321, 15373, 15377, and 15381 under the deliberative process privilege. In short, the court finds that the IRS's descriptions of these pages, both in its *Vaughn* index and in its appendices, are far too vague to show that these documents reflect the give-and-take of the consultative process. While it is true that the IRS may take a categorical approach in its *Vaughn* index, the IRS must still "identify the particular type of document being withheld." *Batton*, 598 F.3d at 177. Without more, the IRS's description of these documents does not inform the court of the type of information withheld or how such information contributes to the IRS's examination of Highland or the adjustment of Highland's tax liability. Accordingly, the court concludes that the IRS has not satisfied its summary judgment burden with respect to these pages and thus the IRS must submit to the court for *in camera* review pages 4, 25, 28, 37, 47, 49, 55, 79, 369, 407, 413, 414, 420, 454, 455, 456, 458-459, 470-471, 474-475, 532, 535, 538, 567-568, 576, 580-581, 588, 15352, 15321, 15373, 15377, and 15381.

### 6. *Records Withheld Under Exemption 6 and Exemption 7(c)*

The IRS also argues that it may withhold pages 14931, 14943, and 15043 in part pursuant to FOIA exemptions 6 and 7(c).[10]  More specifically, the IRS contends that it may withhold these pages under FOIA exemptions 6 and 7(c) to protect the privacy interests of contractors employed by The Brattle Group, as these pages "contain information about private individuals, including partial Social Security Numbers and signatures, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  Memorandum in Support at 17.  In both its response and surreply, however, Highland made no mention of the documents the IRS seeks to withhold under FOIA exemptions 6 and 7(c).  Nevertheless, the IRS still bears the burden with respect to FOIA exemptions 6 and 7(c).

Furthermore, with respect to FOIA exemption 6, the court concludes that the IRS has satisfied its summary judgment burden to withhold pages 14941 and 15043 in part.  The sixth FOIA exemption protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  To determine whether a document may be withheld under the sixth FOIA exemption, the court must determine whether the records at issue constitute "files" within the meaning of 5 U.S.C. § 552(b)(6).  *United*

---

[10]     Since the court has already concluded that the IRS may withhold in part page 14943 under the third FOIA exemption in conjunction with 26 U.S.C. § 6103(a), the court will not discuss the applicability of FOIA exemptions 6 or 7(c) to this page.

*States Department of State v. Washington Post Company*, 456 U.S. 595, 602 (1982).

Following this, the "court must balance the public interest in disclosure against the

interest Congress intended the [e]xemption to protect." *Batton*, 598 F.3d at 180

(citing *Avondale Industries, Inc. v. NLRB*, 90 F.3d 955, 960 (5th Cir. 1996)).   Where

there is no countervailing public interest, however, courts regularly allow the

identifying information of individuals to be withheld under FOIA exemption six.  See

e.g.*, United States Department of State v. Ray*, 502 U.S. 164, 179 (1991) (disclosing the

names of immigrants who returned to their home country would be a clearly

unwarranted invasion of privacy because the proposed public benefit was

hypothetical).

　　Here, it is clear that the records the IRS seeks to withhold under FOIA

exemption 6 constitute files within the meaning 5 U.S.C. § 552(b)(6) and that the

public interest in disclosure is heavily outweighed by the privacy interest protected by

the sixth FOIA exemption.  The court is persuaded that the information contained

within the pages withheld under exemption 6 constitutes a "similar file" within the

meaning of 5 U.S.C. § 552(b)(6).  The Supreme Court has broadly interpreted

"similar files" to include any "information which applies to a particular individual."

*United States Department of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982).

The information contained within the pages withheld under the sixth FOIA

exemption include the social security numbers of contractors employed by The

Brattle Group, their signatures, and the personal telephone number of one of the contractor's supervisors.  Appendix to Reply at 20.  Accordingly, there is no question that this information "applies to a particular individual" and would thus constitute a similar file under 5 U.S.C. § 552(b)(6).

Furthermore, it is clear to the court that the privacy interests in keeping this information from being disclosed are more substantive than, and readily outweigh, the public interest in releasing this information.  The Fifth Circuit has previously recognized that an individual's informational privacy interest in his or her social security number is substantial, as "simultaneous disclosure of an individual's name and confidential [social security number] exposes that individual to a heightened risk of identity theft and other forms of fraud."  *Sherman v. United States Department of Army*, 244 F.3d 357, 365-66 (5th Cir. 2001). Furthermore, other courts have found that individuals have substantial privacy interests in their personal information, such as their names and telephone numbers.  *See,* e.g., *Roseberry-Andrews v. Department of Homeland Security*, 299 F. Supp. 3d 9, 30 (D.D.C. 2018).  Based on the substantial weight of the privacy interest individuals have in their personal information, and because Highland has failed to clearly articulate a compelling public interest that warrants disclosure of said information, *see generally* Response; Surreply, the court concludes that the IRS's withholdings under FOIA exemption 6 are proper.  The IRS has satisfied its summary judgment burden with respect to the pages withheld under

FOIA exemption 6 and the court thus need not address whether FOIA exemption

7(c) applies to these pages.

### 7. *Records Withheld Pursuant to Exemption 7(e)*

The final exemption claimed by the IRS to withhold certain records is FOIA

exemption 7(e).  Although not mentioned in the IRS's memorandum in support or its

reply, in its *Vaughn* index, the IRS claims that pages 15358, 15393, 15400, 15406,

15407, and 15423 should be withheld in part under FOIA exemption 7(e) because

these pages contain an "[i]nvitation to participate in a conference call, containing

[the] conference line access number."  Appendix to Reply at 22.  More specifically,

the IRS contends that conference line access number may be properly withheld

because the "[c]onference line access number is a component of a communication

technique used by the [IRS] to confidentially discuss law enforcement matters [and]

[d]isclosure would allow taxpayers to eavesdrop on confidential law enforcement

discussions."  *Id*.  Highland has made no arguments in response to the IRS as to the

documents withheld in part under FOIA exemption 7(e).  *See generally* Response;

Surreply.

FOIA exemption 7(e) exempts from disclosure "records or information

compiled for law enforcement purposes, but only to the extent that the production of

such law enforcement records or information . . . would disclose techniques and

procedures for law enforcement investigations or prosecutions, or would disclose

guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(e). Because the text of FOIA exemption 7(e) exempts from disclosure records that "*could reasonably be expected* to risk circumvention of the law," the IRS "does not have to prove that circumvention is a necessary result." *Mayer Brown Limited Liability Partnership v. Internal Revenue Service*, 562 F.3d 1190, 1193 (D.C. Cir. 2009). Instead, the IRS need only show that there is a chance of a reasonably expected risk that the law would be circumvented if the information withheld is disclosed. *Id*. Here, the IRS has shown that to the court, as there is a chance of a reasonably expected risk that taxpayers would eavesdrop on law enforcement discussions, and use what is learned to circumvent the law, if the confidential conference line access number is disclosed. *See* Appendix to Reply at 22. The court thus concludes that the IRS may withhold in part pages 15358, 15393, 15400, 15406, 15407, and 15423.

### 8. *Segregability*

Finally, although only briefly addressed in the IRS's memorandum in support, the court agrees with the IRS as to the segregability of the records the IRS is properly withholding pursuant to 5 U.S.C. § 552(b). "Section 522(b) of the FOIA states that '[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.'" *Batton*, 598 F.3d at 178 (quoting 5 U.S.C. § 552(b)). Furthermore, the

court recognizes that "[i]t is error for a district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Schiller v. National Labor Relations Board*, 964 F.2d 1205, 1210 (D.C. Cir. 1992). Based on the detailed descriptions contained within the IRS's *Vaughn* index, the court concludes that the records the IRS withholds in full under FOIA exemption 5 for deliberative process and exemption 7(a) are not segregable, as the pages in question either fully fall within exemptions 5 or 7(a), or they contain nonexempt portions that are so intertwined with exempt material as to be nonsegregable. *See* Appendix to Reply at 17-24.

### III. CONCLUSION

For the reasons stated above, the court **GRANTS IN PART** and **DENIES IN PART** the IRS's motion for summary judgment. For the records on which summary judgment is denied (*i.e.*, pages 4, 25, 28, 37, 47, 49, 55, 79, 348, 369, 407, 413-414, 420, 446, 454-456, 458-459, 470-471, 474-475, 503, 506-507, 532, 535, 538, 547, 550, 567-568, 576, 580-581, 588, 14841, 15352, 15371, 15373, 15377, and 15381) the IRS shall, within fifteen days of this date, file those records under seal for *in camera* inspection by the court.

**SO ORDERED**.

September 30, 2019.

_____
**A. JOE FISH**
**Senior United States District Judge**